**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                              Chapter 13

JEFFREY M. BRODY                        Case No. 21-35368 (KYP)

         Debtor.
-------------------------------------------------------------x

# MEMORANDUM DECISION DISMISSING CHAPTER 13 CASE

**APPEARANCES:**

GENOVA, MALIN & TRIER, LLP
*Counsel for the Debtor*
1136 Route 9
Wappingers Falls, NY 12590
  By:    Andrea B. Malin, Esq.
           Of Counsel

CHAPTER 13 STANDING TRUSTEE
399 Knollwood Road
Suite 102
White Plains, NY 10603
  By:    Thomas C. Frost, Esq.
           Of Counsel

LIPPES MATHIAS LLP
*Counsel for Krystal Shultis n/k/a Krystal Phillips*
54 State Street
Suite 1001
Albany, NY 12207
  By:    Leigh A. Hoffman, Esq.
           Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

Jeffrey M. Brody ("Debtor") is a personal injury attorney with Finkelstein & Partners LLP ("Finkelstein LLP") who filed a Chapter 13 bankruptcy petition due to the pendency of a malpractice action commenced against him by Krystal Shultis n/k/a Krystal Phillips ("Creditor"). In his bankruptcy schedules, the Debtor disclosed his wages and social security income but did not disclose a contingent right to receive fees ("Referral Fees") from Finkelstein LLP for having previously transferred personal injury cases to Finkelstein LLP when he ceased operation of his own law firm – Jeff Brody Injury Law ("Jeff Brody Law"). In the period leading up to the Debtor's bankruptcy filing and the period since the filing, the Debtor received *hundreds of thousands of dollars* in Referral Fee income from Finkelstein LLP but did not disclose this fact to creditors until recently.

Thomas C. Frost ("Trustee"), the Chapter 13 standing trustee, seeks dismissal of this bankruptcy case on bad faith grounds based on the Debtor's failure to disclose the receipt of Referral Fees ("Motion to Dismiss").[1] The Creditor joins the Motion to Dismiss,[2] and the Debtor opposes it.[3] For the reasons stated, the Debtor's bankruptcy case is DISMISSED.

---

[1] *See Affirmation in Support of Motion to Dismiss Case*, docketed on Apr. 15, 2025 ("Trustee Brief") (ECF Doc. # 79). "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case.

[2] *See Declaration in Support of Chapter 13 Trustee's Motion to Dismiss*, dated May 5, 2025 ("Creditor Joinder") (ECF Doc. # 83).

[3] *See Opposition to Trustee's Motion to Dismiss Case For Bad Faith Pursuant to 11 U.S.C. §§ 1307, 1322, 1325 and 1329*, dated May 6, 2025 ("Debtor Brief") (ECF Doc. # 84); *Supplemental Affidavit of Jeffrey Brody in Opposition to Trustee's Motion to Dismiss For Bad Faith Pursuant to 11 U.S.C. § 1307*, docketed on June 3, 2025 ("Debtor Affidavit") (ECF Doc. # 95).

**JURISDICTION**

This Court has jurisdiction over the Motion to Dismiss pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**BACKGROUND**

**A.    The Debtor's Receipt of Referral Fees**

The Debtor is a personal injury attorney who owned and operated Jeff Brody Law until the end of June 2017. (Debtor Affidavit ¶ 2.) Upon closing Jeff Brody Law, the Debtor became employed by Finkelstein LLP and transferred all open personal injury cases to Finkelstein LLP "in exchange for a salary and a right to receive a referral fee on the transferred cases." (*Id.*) As the Debtor describes it, his contractual right to a Referral Fee for a transferred case was contingent on a monetary recovery in that case. (*Id.* ¶ 5.)[4]

In opposition to the instant Motion to Dismiss, the Debtor submitted copies of his individual tax returns for each year between 2020 and 2024, (*see* Debtor Brief, Ex. B (2020 tax return), Ex. C (2021 tax return), Ex. D (2022 tax return), Ex. E (2023 tax return), and Ex. F (2024 tax return)), and a copy of the Debtor's 2019 tax return was provided by the Trustee upon the Court's request.[5] (*See* ECF Doc. # 103.) The Debtor

---

[4]   The instrument granting the Debtor the right to receive Referral Fees is not part of the record of the Motion to Dismiss.

[5]   References to the Debtor's tax returns will be denoted as "[Year] Tax Return." Certain of the tax returns were filed on February 7, 2025 as exhibits attached to a brief in support of the Debtor's motion to amend the plan to allow the Debtor's friend to pay the Trustee an amount sufficient to satisfy the

3

received Referral Fees in every year between 2019 and 2024. The Referral Fees were set forth in Schedule C of the tax returns as profit from operating a business, and the business entity identified by the Debtor on each Schedule C was Jeff Brody Law.[6] The Referral Fees received by the Debtor between 2019 and 2024 were as follows:

| YEAR | REFERRAL FEES |
|---|---|
| 2019 | $131,139 |
| 2020 | $15,188 |
| 2021 | $57,312 |
| 2022 | $34,345 |
| 2023 | $183,772 |
| 2024 | $5,001 |
| TOTAL | $426,757 |

**B.    The Debtor's Bankruptcy Case**

The Debtor commenced this Chapter 13 bankruptcy case on May 4, 2021 ("Petition Date"). Ten days later, the Debtor filed certain of his schedules including Schedule A/B listing his property ("Property Schedule"). (ECF Doc. # 10.) Part 4 of the Property Schedule asked the Debtor to identify his financial assets. Among other things, Part 4 required the Debtor to list "contingent and unliquidated claims of every nature" (Property Schedule, Part 4, Question 34) and "[a]ny financial assets you did not already

---

remaining plan payments in full ("Early Payoff Motion"). (*See* ECF Doc. ## 64, 67.) The Early Payoff Motion was voluntarily withdrawn by the Debtor on March 6, 2025. (ECF Doc. # 73.)

[6]    Despite his statement that Jeff Brody Law ceased operations in June 2017 (Debtor Affidavit ¶ 2), the Debtor deducted business expenses (thereby reducing net business profit) for Jeff Brody Law in every year between 2019 and 2024. (*See* 2019 Tax Return, Schedule C (deducting $441 for depreciation, $6,818 for interest, $9,140 for legal and professional services, and $134 for office expenses); 2020 Tax Return, Schedule C (deducting $368 for depreciation); 2021 Tax Return, Schedule C (deducting $179 for depreciation and $350 for office expenses); 2022 Tax Return, Schedule C (deducting $45 for depreciation and $282 for office expenses); 2023 Tax Return, Schedule C (deducting $45 for depreciation, $95 for legal and professional services, and $394 for office expenses); and 2024 Tax Return, Schedule C (deducting $45 for depreciation, $95 for legal and professional services, and $415 for office expenses).)

4

list." (*Id.*, Part 4, Question 35.)  The Debtor did not list his contractual right to Referral Fees in response to these questions or anywhere else on the Property Schedule.

The Debtor submitted his Schedule I listing his sources of income ("Income Schedule") on May 14, 2021. (ECF Doc. # 10.)  The Debtor stated that he had been a lawyer employed by Finkelstein LLP for the past four years (Income Schedule, Part 1), and his gross monthly salary was $11,538.46. (*Id.*, Part 2.)  On December 15, 2023, the Debtor submitted an updated Schedule I ("Updated Income Schedule") showing that his monthly salary had increased to $14,634.84.[7] (ECF Doc. # 58.)  Part 2, Question 8 of the Income Schedule and Updated Income Schedule asked the Debtor to list "all other income regularly received" including "income from . . . operating a business" and any "[o]ther monthly income." (Income Schedule, Part 2, Questions 8a and 8h; Updated Income Schedule, Part 2, Questions 8a and 8h.)  The Debtor did not mention his Referral Fee income in response to these questions or anywhere else on the Income Schedule or the Updated Income Schedule.

The Debtor also filed his Statement of Financial Affairs ("SOFA") on May 14, 2021. (ECF Doc. # 13.)  Part 2, Question 4 of the SOFA asked the Debtor to identify the sources of his income from employment or operating a business in the period leading up to the bankruptcy filing.  The Debtor stated such income on his SOFA as follows:

| TIMEFRAME | GROSS INCOME |
|---|---|
| 1/1/2021 – Petition Date | $34,615.38 |
| 1/1/2020 – 12/31/2020 | $141,061.86 |
| 1/1/2019 – 12/31/2019 | $142,504.00 |

---

[7]    The Debtor had asked the Trustee for approval to allow the Debtor to sign a lease for an automobile.  The Trustee told the Debtor that he would have to file updated schedules showing income and expenses before the Trustee could consider the request.  Thus, the Debtor filed the Updated Income Schedule. (*See* Trustee Brief ¶ 11; Debtor Brief ¶ 11.)

5

Part 2, Question 5 of the SOFA asked the Debtor to list "any other income" received in the same period, and the Debtor listed only his social security income in response. Despite listing his wages and social security income in his SOFA, the Debtor *omitted* the receipt of Referral Fee income that he reported in his 2019 and 2020 Tax Returns. In 2019, the Debtor received Referral Fees totaling $131,139 (*see* 2019 Tax Return at 1 (showing wages of $142,504 *and* Referral Fee income of $131,139),[8] and in 2020, the Debtor received Referral Fees totaling $15,188. (*See* 2020 Tax Return at 1 (showing wages of $141,062 *and* Referral Fee income of $15,188).)

The Debtor's meeting of creditors pursuant to 11 U.S.C. § 341(a) ("341 Meeting")[9] was held on June 14, 2021. At the 341 Meeting, the Debtor testified that the bankruptcy filing was prompted by the Creditor's malpractice lawsuit, which "resulted . . . in significant damages." (341 Tr. at 8:4-13.) The Debtor testified to the following about the closing of Jeff Brody Law and the last time income was generated therefrom:

> [TRUSTEE]: And when is the last time [Jeff Brody Law] made you any income? When was that last -- when was that closed?
>
> MR. BRODY: July 2017. Actually, June. End of June 2017.

(*Id.* at 10:14-18.)

---

[8]    The actual Referral Fee amount listed on page 1 of the 2019 Tax Return was $131,499. That amount reflected a $360 addition for "[t]axable refunds, credits, or offsets of state and local income taxes." (*See* 2019 Tax Return, Schedule 1 (showing "Additional Income and Adjustments to Income").)

[9]    11 U.S.C. § 341(a) provides that, "[w]ithin a reasonable time after the order for relief in a [bankruptcy case], the United States trustee shall convene and preside at a meeting of creditors." The transcript of the 341 Meeting is attached as Exhibit A to the Debtor Affidavit, and references to that transcript will be denoted as "341 Tr. at _:_."

**C.    The Creditor's Claim and Plan Confirmation**

On July 8, 2021, the Creditor filed a proof of claim in the amount of $500,000.00, and, on September 20, 2021, the Creditor filed an amended proof of claim reducing the claim amount to $246,000.00 (as amended, the "Claim"). (*See* Claim Nos. 9-1 and 9-2.) According to the addendum attached to the Claim, the Creditor suffered physical injuries from medical malpractice, and the Claim is based on the Debtor's alleged legal malpractice while representing the Creditor in the prosecution of the medical malpractice claim. The Claim also attached an exhibit, which explained that the reduction in the Claim amount from $500,000.00 to $246,000.00 was "not because it reflects a fair settlement of the claims but rather to avoid the expenses associated with litigation to liquidate her damages." (Claim, Ex. 1.) At the hearing on the Motion to Dismiss, Creditor's counsel added that the Creditor had agreed to reduce the Claim to an amount that would allow the Debtor to remain under the statutory debt limit for Chapter 13 debtors.

The Debtor filed an amended Chapter 13 plan on November 19, 2021 ("Plan") (ECF Doc. # 38), which contemplated monthly Plan payments of $315.00 over sixty months to pay creditor claims. (Plan, Part 2.) The Creditor held the largest claim, and general unsecured creditors as a whole stood to recover approximately 0.3% on account of their claims. The proposed Plan payment amount correlated to the Debtor's disposable income as calculated by review of his stated income and expenses, no party filed an objection to the Plan, and the Court confirmed the Plan on April 7, 2022. (*Order Confirming Chapter 13 Plan*, dated Apr. 7, 2022 ("Confirmation Order") (ECF Doc. # 51).)

**D.     The Motion to Dismiss**

The Trustee filed the instant Motion to Dismiss on April 15, 2025. The Trustee states that the Debtor intentionally hid his receipt of Referral Fees throughout this case. (Trustee Brief ¶¶ 1-12.) The Trustee asserts that the Debtor's lack of disclosure amounts to bad faith and is grounds for dismissal. (*Id*. ¶¶ 13-19.) On May 5, 2025, the Creditor filed a joinder to the Motion to Dismiss pointing out that she had learned of the Debtor's substantial Referral Fee income for the first time when she was served with the Motion to Dismiss. (Creditor Joinder ¶ 6.)

The Debtor filed his opposition to the Motion to Dismiss on May 6, 2025. He argues that the entry of the Confirmation Order is *res judicata* on the issue of the Debtor's good faith (Debtor Brief at 6-10), and in any event, the Debtor's conduct here did not constitute bad faith. (*Id*. at 12-17.)

The Court heard oral argument on May 13, 2025 with the Trustee, Debtor's counsel, and Creditor's counsel present. The Court adjourned the matter to allow the parties one final opportunity to reach a settlement through a Plan amendment or otherwise. The Trustee sent an email on May 29, 2025 (with copies to the parties) informing the Court that the parties were unable to reach a settlement. In light of the Trustee's email, the Court entered an order on June 5, 2025 canceling the adjourned hearing and taking the Motion to Dismiss under advisement. (ECF Doc. # 97.)

## DISCUSSION

**A.     Standards Governing Dismissal**

Section 1307(c) of the Bankruptcy Code provides that, "on request of a party in interest . . . and after notice and a hearing, the court . . . may dismiss a [Chapter 13 bankruptcy case] . . . for cause . . . ." 11 U.S.C. § 1307(c). Subsection (c) identifies eleven

8

separate circumstances warranting dismissal, *see* 11 U.S.C. § 1307(c)(1) – (11), but the list is not exhaustive. *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013). "Although bad faith is not expressly enumerated in the statute, it is well established that lack of good faith may also be cause for conversion or dismissal under § 1307(c)." *Froman v. Fein* (*In re Froman*), 566 B.R. 641, 647 (S.D.N.Y. 2017).

The Court must review the "totality of the circumstances" when determining whether a debtor acted in bad faith. *Lin*, 499 B.R. at 435 (citing *In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995)). Dismissal for bad faith "is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1129 (6th Cir. 1991). A finding of bad faith is a "highly factual determination," and the Court should consider multiple factors including "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code." *Lin*, 499 B.R. at 436 (quoting *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1312 (2d Cir. 1997) and citing *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995)). "The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court." *In re Ciarcia*, 578 B.R. 495, 500 (Bankr. D. Conn. 2017) (citation and internal quotation marks omitted).

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (citation and internal quotation marks omitted). "Inherent in the concept of the 'honest debtor' are the attributes of good faith and candor, which are necessary prerequisites to any bankruptcy filing." *In re Campbell*, 634 B.R. 647, 653 (Bankr. D.D.C. 2021) (quoting *Zick*, 931 F.2d at 1129-30) (alteration and internal quotation marks omitted). The debtor's "fidelity to candid and accurate financial disclosure" is the "cornerstone of any bankruptcy case." *In re Tornheim*, 239 B.R. 677, 684 (Bankr. E.D.N.Y. 1999). The debtor has a continuing obligation to update financial disclosures post-petition. *BPP Ill., LLC v. Royal Bank of Scotland Grp., PLC*, No. 13-CV-638 (JMF), 2015 WL 6143702, at *5 (S.D.N.Y. Oct. 19, 2015) ("[T]he debtor's sweeping duty to disclose does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding, up until the bankruptcy case is closed.") (citation and internal quotation marks omitted), *aff'd*, 859 F.3d 188 (2d Cir. 2017); *In re Riverwood La Place Assocs., LLC*, 234 B.R. 256, 259 (Bankr. E.D.N.Y. 1999). The ongoing obligation to update financial disclosures is particularly important in Chapter 13 cases where the amount payable to creditors is calculated by review of the debtor's disposable income. As the Fifth Circuit explained:

> In a Chapter 13 proceeding, debtors are obligated to amend their schedules to include subsequent income, even if that income is not known or realized at the time of filing. . . . Even if the plan, as initially proposed, is confirmed, § 1329 allows the trustee to seek a subsequent modification of the plan based on an increase in the debtor's income, so that more money is paid to the creditors. . . . Put another way, permitting a debtor to retain post-petition improvements in earnings, without committing the increase in income that is not reasonably necessary for support of the debtor or the debtor's dependents, would be grounds for rejection or later modification of a Chapter 13 plan. As a practical matter, then, the debtors

10

>would be obligated to amend their schedules to disclose any post-petition income under Chapter 13.

*United States Tr. v. Cortez* (*In re Cortez*), 457 F.3d 448, 457-58 (5th Cir. 2006) (citations omitted). The debtor must disclose their interest in assets even when there is "a colorable theory for why those assets should be shielded from creditors." *Flugence v. Axis Surplus Ins. Co.* (*In re Flugence*), 738 F.3d 126, 130 (5th Cir. 2013) ("The reason for the rule is obvious: Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets – even where he has a colorable theory for why those assets should be shielded from creditors – allows that issue to be decided as part of the orderly bankruptcy process.") (footnote omitted); *accord Glassman v. Feldman* (*In re Feldman*), 597 B.R. 448, 458 (Bankr. E.D.N.Y. 2019) ("The fact that the Debtor has failed to disclose its interest in property that turns out to have little or no value to the estate may be the basis for denying the debtor its discharge because the determination of relevance and importance of the question is not for the Debtor to make. It is the Debtor's role simply to consider the question carefully and answer it completely and accurately.") (citation and internal quotation marks omitted), *aff'd*, 19-CV-5002, 19-CV-5003 (MKB), 2020 WL 6119270 (E.D.N.Y. Sept. 30, 2020).

Given the importance of a debtor's full and honest financial disclosure, courts have dismissed Chapter 13 bankruptcy cases where the debtor concealed assets or materially misstated their income. *See, e.g.*, *In re Heredia*, Case No. 18-22230 (CGM), 2024 WL 3173489, at *4 (Bankr. S.D.N.Y. June 25, 2024) (dismissing Chapter 13 case where the debtor failed to timely disclose post-confirmation increase in income from $76,700 to $155,520); *In re Laiscell*, Case No. 20-20882 (JJT), 2023 WL 5006356, at

11

*3 (Bankr. D. Conn. Aug. 4, 2023) (dismissing Chapter 13 case where the debtor failed to disclose the existence of a pre-petition civil action which would provide creditors with a substantial recovery if successful); *In re Boyd*, Case No. 19-20846 (JWK), 2020 WL 6938828, at *4 (Bankr. W.D. La. Nov. 3, 2020) (dismissing Chapter 13 case where the debtor failed to disclose nearly $70,000 in income over a three-year period); *Feldman*, 597 B.R. at 458 (dismissing Chapter 13 case for, among other things, the debtor's material misstatements in his bankruptcy petition, schedules, and statement of financial affairs); *see also Leavitt v. Soto* (*In re Leavitt*)*,* 171 F.3d 1219, 1225-26 (9th Cir. 1999) (affirming dismissal of Chapter 13 case where the debtor, among other things, "failed to fully disclose his assets and financial dealings"); *Zvoch v. Winnecour* (*In re Zvoch*), 618 B.R. 734, 739 (Bankr. W.D. Pa. 2020) ("The failure to disclose a material income surge is tantamount to concealing assets and is grounds for dismissal."); *cf. In re Solis*, 172 B.R. 530, 533 (Bankr. S.D.N.Y. 1994) ("If the plan is not modified, the debtor will receive a $40,000 windfall while his unsecured creditors receive only 10% of their claims. That would be a perversion of the Code's good faith provision (section 1325(a)), and ability to pay test, (section 1325(b)).").

**B.    Analysis**

The facts here establish that the Debtor concealed from creditors his contractual right to receive, and post-petition receipt of, Referral Fees. Specifically, the Debtor:

- omitted receipt of Referral Fees totaling $131,139 in 2019 from his SOFA;[10]
- omitted receipt of Referral Fees totaling $15,188 in 2020 from his SOFA;[11]

---

[10]    *Compare* 2019 Tax Return, Schedule C (reporting Referral Fee income of $131,139) *with* SOFA, Part 2, Questions 4 & 5 (failing to disclose Referral Fee income).

[11]    *Compare* 2020 Tax Return, Schedule C (reporting Referral Fee income of $15,188) *with* SOFA, Part 2, Questions 4 & 5 (failing to disclose Referral Fee income).

12

- omitted the contractual right to receive Referral Fees as an asset in his Property Schedule;[12]

- testified at his 341 Meeting that the last time he made income from Jeff Brody Law was in June 2017, despite reporting substantial Referral Fee income through Jeff Brody Law on subsequent tax returns;[13]

- failed to file an updated income schedule (Schedule I) in 2021 to reflect receipt of Referral Fees totaling $57,312;[14]

- failed to file an updated Schedule I in 2022 to reflect receipt of Referral Fees totaling $34,345;[15] and

- failed to file an updated Schedule I in 2023 to reflect receipt of Referral Fees totaling $183,772.[16]

The Debtor is not an "honest debtor" deserving of the substantial benefits afforded by a bankruptcy discharge. The Debtor's creditors were entitled to know at the onset of the case that the Debtor had a contractual right to Referral Fees that had generated income in the amount of $146,327 in the immediate two years prior to Petition Date. Had creditors known this fact, they could have inquired about the nature of the Referral Fees and objected to confirmation to the extent they thought Plan payments did not account for the Debtor's right to receive future Referral Fees. Instead, creditors were kept in the dark about the Referral Fees and did not object to the Plan – which provided them with a meager 0.3% distribution – in reliance on the selective financial disclosures made by the Debtor.

---

[12]   *See* Property Schedule, Part 4, Questions 34 & 35 (failing to disclose contractual right to receive Referral Fees in response to questions seeking, *inter alia*, information about the Debtor's "contingent and unliquidated claims of every nature").

[13]   *See* 341 Tr. at 10:14-18 (stating that he last made income from Jeff Brody Law when it ceased operations in June 2017).

[14]   *See* 2021 Tax Return, Schedule C (reporting Referral Fee income of $57,312).

[15]   *See* 2022 Tax Return, Schedule C (reporting Referral Fee income of $34,345).

[16]   *See* 2023 Tax Return, Schedule C (reporting Referral Fee income of $183,772).

13

The Debtor's concealment continued throughout the case as he failed to notify creditors that he had reported Referral Fee income in the aggregate amount of $295,618 to taxing authorities following the Petition Date.[17] Had creditors known about the substantial post-petition Referral Fee income, they could have sought a Plan modification which would have resulted in a greater distribution than the 0.3% payout they are receiving. The Court concludes that the Debtor's lack of candor regarding the Referral Fees was in bad faith and constitutes "cause" for dismissal under section 1307(c) of the Bankruptcy Code.

The Debtor's arguments to the contrary are unavailing. First, the Debtor argues that entry of the Confirmation Order is *res judicata* on all matters resolved by confirmation, including the Debtor's good faith. (Debtor Brief at 6-10.) The policy favoring finality of a Chapter 13 confirmation order is incorporated in the Bankruptcy Code. Under section 1327(a), the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). And section 1330(a) of the Bankruptcy Code "permits revocation of confirmation only on the grounds of fraud. The purpose of this limitation is to promote the finality of the confirmation order, which is normally *res judicata* and which is relied upon by the debtor and other parties to the case." 8 COLLIER ON BANKRUPTCY ¶ 1330.01 (16th ed. 2025).[18] However, *res judicata* does not apply when "the evidence was either

---

[17]    The Debtor submitted his 2020 Tax Return roughly four months after the Petition Date.

[18]    11 U.S.C. § 1330(a) provide that, "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud."

14

fraudulently concealed" or "could not have been discovered with due diligence." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (citation and internal quotation marks omitted); *Duplessis v. Valenti* (*In re Valenti*), 310 B.R. 138, 151 (B.A.P. 9th Cir. 2004) ("[R]es *judicata* will not necessarily defeat a future motion to convert or dismiss Debtor's bankruptcy case under Section 1307(c) based on pre-confirmation matters, where the debtor's own conduct (such as concealment) would amount to estoppel to bar that defense.").

Here, *res judicata* does not bar the Motion to Dismiss because the Debtor concealed the existence of the Referral Fees. The Debtor's creditors had no reason to suspect that the Debtor had a substantial source of supplemental income because it was omitted from the Debtor's schedules and SOFA. Given the Debtor's omissions, creditors were not afforded a reasonable opportunity to perform due diligence with respect to the Referral Fees. Indeed, courts have dismissed analogous Chapter 13 cases *post confirmation* where the debtor concealed assets or income. *See, e.g.*, *Heredia*, 2024 WL 3173489, at *4; *Laiscell*, 2023 WL 5006356, at *3.

Second, at oral argument, Debtor's counsel pointed out that the Trustee had certain of the Debtor's tax returns, which showed receipt of Referral Fee income, but did not move to modify the Plan. (*See also* Debtor Affidavit ¶ 10 (stating that the Debtor provided the Trustee with post-petition tax returns).) But the Debtor's duty to update his financial disclosures is unequivocal and does not depend on the actions or inactions of third parties. *Boyd*, 2020 WL 6938828, at *3 ("A debtor has a duty to disclose additional income without additional prodding from the Trustee or any other interested party."). Moreover, while the Trustee may have had tax documents showing receipt of Referral Fees, the creditors (including the Creditor who filed the Creditor Joinder

15

supporting the Motion to Dismiss) did not, and thus had no basis to believe that modification of the Plan was a viable remedy.

Third, the Debtor states that he omitted the right to receive Referral Fees from his schedules because it was difficult to predict whether a fee would be paid for a transferred case. (Debtor Affidavit ¶¶ 5-6.) But, as explained *supra*, the Debtor's disclosure obligation extends broadly to include property that "turns out to have little or no value . . . ." *Felderman*, 597 B.R. at 458 (citation omitted). And here, the Debtor received Referral Fee income in *every* year between 2019 and 2024.[19]

Fourth, the Debtor included a chart in his affidavit stating that his average monthly income between 2022 and 2024 was $13,490.00, which approximated the $14,634.84 in monthly income the Debtor listed in his December 2023 Updated Income Schedule. (Debtor Affidavit ¶¶ 8-9.) However, the Debtor's calculation of $13,490.00 was based on a monthly income *after deducting state and federal income taxes*. (*Id.* ¶ 8 (Debtor's chart showing post-tax monthly income).) In contrast, the amount listed by the Debtor in the Updated Income Schedule ($14,634.84) is his purported *gross monthly income*. (*See* Updated Income Schedule, Part 2, Question 2.) In actuality, the Debtor's average gross monthly income from Finkelstein LLP between 2022 and 2024 – based on his tax returns – is $19,448.94:

---

[19] The Debtor's 2017 and 2018 tax returns are not part of the record of the Motion to Dismiss.

| YEAR | SALARY | REFERRAL FEES | TOTAL INCOME |
|---|---|---|---|
| 2022 | $151,222.00 | $34,345.00 | $185,567.00 |
| 2023 | $162,443.00 | $183,772.00 | $346,215.00 |
| 2024 | $163,379.00 | $5,001.00[20] | $168,380.00 |
| **TOTAL GROSS INCOME BETWEEN 2022-2024: $700,162.00** | | | |
| **AVERAGE MONTHLY GROSS INCOME:   $19,448.94** | | | |

Simply put, the Debtor's schedules did not disclose the receipt of Referral Fees.

## CONCLUSION

For the reasons stated, the Trustee's Motion to Dismiss is GRANTED. Prior to the Court's entry of a dismissal order, the parties shall appear for a status conference on August 12, 2025 at 10:00 a.m. to discuss the disposition of other applications, including the fee applications of Debtor's counsel, which remain pending.

Dated:      July 28, 2025
            Poughkeepsie, New York

                                        /s/ *Kyu Y. Paek*
                                        Honorable Kyu Y. Paek
                                        United States Bankruptcy Judge

---

[20]     The Debtor's chart stated that he earned Referral Fees in 2024 totaling $5,556.00 (*see* Debtor Affidavit ¶ 8), but the Debtor claimed business expenses totaling $555.00 for Jeff Brody Law in 2024 (*see supra* note 6) thereby reducing his 2024 Referral Fee income to $5,001.00. (*See* 2024 Tax Return, Schedule C.)